**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
NSI INTERNATIONAL, INC.,

                     Plaintiff,

            - against -

MONA MUSTAFA,

                   Defendant.
-----------------------------------------------------------X

                                **REPORT AND**
                           **RECOMMENDATION**

                         CV 12-5528 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**      P<small>RELIMINARY</small> S<small>TATEMENT</small>

      This litigation arises out of an alleged breach of a settlement agreement (the "Settlement

Agreement") executed in July 2011 by *pro se* Defendant Mona Mustafa ("Defendant" or

"Mustafa") and Plaintiff NSI International, Inc. ("Plaintiff" or "NSI").[1]  *See generally* First

Amended Complaint ("FAC") [DE 9]; FAC, Ex. A (July 2011 "Agreement and Release").  The

Defendant is a former employee of Plaintiff NSI whose employment was terminated on

December 12, 2008.  FAC ¶¶ 3,4; Answer [DE 25] ¶ 3.  NSI asserts that any potential claims

Defendant had or may have had as a result of the termination of her employment were resolved

pursuant to the July 2011 Settlement Agreement.  *See generally* FAC.  In addition, NSI claims

that Plaintiff failed to take certain actions required by the Settlement Agreement and took other

---

[1]      The Court notes that NSI and Mustafa entered into a prior agreement on January 17, 2009
purportedly to resolve Mustafa's allegations of employment discrimination and unpaid severance
pay pursuant to an alleged employment contract.  *See* FAC ¶¶ 5-6. NSI claims that Mustafa
attempted to rescind the agreement, at which point NSI commenced an action against Mustafa on
March 18, 2009 in the New York State Supreme Court, County of Suffolk. Id. ¶¶ 7-8.  That case
was subsequently removed by Mustafa's then counsel to the United States District Court for the
Eastern District of New York and assigned to Judge Bianco.  *See* CV 09-1536.  In that lawsuit,
NSI asserted claims for breach of the January 27, 2009 settlement agreement and for a
declaratory judgment.  *See id.*

affirmative steps which breached the Agreement. FAC ¶¶ 18-25. Based on these claims, NSI sought the following relief as outlined in the FAC: (1) a judgment against Defendant Mustafa in an amount to be determined at trial; (2) attorneys' fees and costs NSI has incurred in enforcing the settlement agreement and defending a complaint pending before the Illinois Human Rights Commission; (3) an order directing Mustafa to withdraw the complaint pending before the Illinois Human Rights Commission; (4) an order directing Mustafa to comply with the settlement agreement between her and NSI; and (5) a stay of Mustafa's matter pending before the Illinois Human Rights Commission. FAC ("Prayer for Relief").

Before the Court at this time is (1) NSI's motion for summary judgment on the single cause of action set forth in the FAC, namely, breach of contract [DE 11], and (2) Mustafa's letter motion seeking leave to file a Motion to Impose Sanctions on NSI and an additional motion to strike the complaint. *See* DE 30 and 48. In opposing the motion for summary judgment, Mustafa has filed her own Declaration [DE 38] and a "Statement of Undisputed Facts Pursuant to Local Rule 56.1 in Support of Plaintiff's Motion for Summary Judgment" [DE 39]. On the same date that these latter documents were filed, Mustafa also filed an "Affidavit" of her own stating that she was making the affidavit "in support of a prayer for relief that this case be referred to the appropriate authorities, including law enforcement, for a competent investigation." Affidavit of Mona Mustafa dated April 22, 2013 [DE 37], ¶3.

In a letter response dated August 29, 2013, NSI's counsel opposed Mustafa's letter motion seeking leave to file a Motion to Impose Sanctions. DE 49. In that letter, NSI's counsel argues that sanctions are not warranted, particularly in light of Defendant's actions in breaching

the settlement agreement. *Id.* Judge Bianco has referred both motions to this Court for a Report

and Recommendation. *See* Electronic Order, July 22, 2013; Electronic Order, Sept. 20, 2013.

Having carefully considered the parties' submissions, including the parties' Local Civil

Rule 56.1 Statements, as well as the applicable case law, this Court respectfully recommends to

Judge Bianco that (i) Plaintiff's motion for summary judgment be GRANTED; and (ii)

Defendant's request to move for sanctions and to strike the FAC be DENIED for the reasons

which follow here.

## II.    BACKGROUND

The following facts are drawn from Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1 Stmt.")

[DE 33], Defendant's Rule 56.1 Counter-Statement ("Def.'s 56.1 Stmt.") [DE 39], and the

declarations of Plaintiff's counsel, with exhibits attached (*see* Decl. of Joseph M. Labuda

("Labuda Decl.") [DE 32]; *see also* Decl. of Jamie S. Felsen ("Felsen Decl.") [DE 40],

Defendant's Affidavit in Opposition ("Def.'s Aff.") [DE 37], and Defendant's Declaration in

Opposition with exhibits attached ("Def.'s Decl.") [DE 38]. Only pertinent facts are outlined

here and any relevant discrepancies in the evidence are noted. Upon consideration of a motion

for summary judgment, the Court construes the facts in the light most favorable to the non-

moving party. *See, e.g., Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

Defendant was the Vice-President of Regional Sales for NSI from June 6, 2007 until

December 12, 2008. Pl.'s 56.1 Stmt. ¶ 1; Def.'s 56.1 Stmt. ¶ 1. On December 12, 2008, NSI

terminated Defendant's employment. Pl.'s 56.1 Stmt. ¶ 2; Def.'s 56.1 Stmt. ¶ 2. NSI and

Mustafa, through their respective counsel, then engaged in numerous discussions in an attempt to

resolve any claims Defendant may have alleged against NSI as a result of her termination.  Pl.'s 56.1 Stmt. ¶ 3; Def.'s 56.1 Stmt. ¶ 3.[2]

On or about March 5, 2009, Mustafa filed a "charge of discrimination" with the Illinois Department of Human Rights alleging discrimination in violation of the Illinois Human Rights Act based on her alleged disabilities (case number 2009CN2698).  Pl.'s 56.1 Stmt. ¶ 7; Def.'s 56.1 Stmt. ¶ 7; *see* Charge of Discrimination, attached as Ex. F to the Labuda Decl.[3]  On March 18, 2009, NSI commenced an action against Mustafa in the New York State Supreme Court, County of Suffolk, which was subsequently removed to the United States District Court for the Eastern District of New York on April 14, 2009.  Pl.'s 56.1 Stmt. ¶ 4; *see* Def.'s 56.1 Stmt. ¶ 4.  In that action, NSI asserted claims for (i) breach of the 2009 settlement agreement; and (ii) a declaratory judgment.  Pl.'s 56.1 Stmt. ¶ 5; Def.'s 56.1 Stmt. ¶ 5.  Mustafa asserted a counterclaim against NSI for breach of her employment agreement.  Pl.'s 56.1 Stmt. ¶ 6; Def.'s 56.1 Stmt. ¶ 6.

On August 9, 2010, Defendant withdrew her March 9, 2009 charge of discrimination (case number 2009CN2698) which was pending before the Illinois Department of Human Rights ("IDHR").  Pl.'s 56.1 Stmt. ¶ 8; Def.'s 56.1 Stmt. ¶ 8.  The IDHR approved Mustafa's request to withdraw the charge and closed the file on August 9, 2010.  *See* Order of Closure, attached as

---

[2]     In the FAC, NSI asserts that the parties in fact entered into an agreement in which NSI agreed to pay Mustafa $16,000 in exchange for a release from Mustafa.  FAC ¶ 6.  NSI claims that Mustafa tried to rescind the agreement on February 16, 2009.  *Id.* ¶ 7.  Defendant disputes that there was ever a valid settlement agreement in 2009.

[3]     Although Plaintiff's counsel refers to this filing as a "Verified Complaint," Defendant is correct that the agency document is entitled "Charge of Discrimination."  Notwithstanding the error by NSI regarding the title of the filing, there is no dispute that the parties are referring to the same filing which occurred on March 5, 2009 at the Illinois Department of Human Rights.

Ex. G to the Labuda Decl.  However, on or about February 16, 2010, Mustafa filed a second

Charge of Discrimination with the IDHR (case number 2010CF2063) alleging that NSI

commenced the state court case against her in Suffolk County in retaliation for her filing the first

charge of discrimination in case number 2009CN2698.  Pl.'s 56.1 Stmt. ¶ 9; *see* Charge of

Discrimination, attached as Ex. H to the Labuda Decl.  Mustafa disputes the filing date for this

second charge.  Specifically, she claims she filed the Charge of Discrimination on September 15,

2009, and "inexplicably the Illinois Department of Human Rights did not perfect her charge for

approximately five months."  *See* Def.'s 56.1 Stmt. ¶ 7.  The Court notes that the second charge

to the IDHR shows February 16, 2010 as the date the charge was received by the IDHR Intake

Division.  Labuda Decl., Ex. H.

The IDHR issued a "Notice of Dismissal For Lack of Substantial Evidence" regarding

Mustafa's retaliation charge in case number 2010CF2063.  *See* Pl.'s 56.1 Stmt. ¶ 10; Def.'s 56.1

Stmt. ¶ 10; *see* IDHR Notice of Dismissal, attached as Ex. I to the Labuda Decl.  Although

Mustafa acknowledges the dismissal, she maintains that the dismissal was later vacated by the

IDHR on August 8, 2012.  Def.'s 56.1 Stmt. ¶ 10.  In February 2011, Mustafa filed a Request for

Review of the Illinois Department of Human Rights' determination to dismiss the retaliation

charge.  *See* Pl.'s 56.1 Stmt. ¶ 11; Def.'s 56.1 Stmt. ¶ 11; *see* Request for Review, attached as

Ex. J to the Labuda Decl.  Mustafa argued in that Request that "the charge should not have been

dismissed because of errors of fact and reason."  Labuda Decl., Ex. J.

NSI maintains that in order to resolve all disputes between them, Mustafa and NSI

entered into the Settlement Agreement in July 2011.  *See* Pl.'s 56.1 Stmt. ¶ 12.  The Settlement

Agreement was executed by Mustafa on July 15, 2011 and by NSI on July 25, 2011.  *Id.*; *see*

Settlement Agreement, attached as Ex. A to the FAC; Def.'s Opp. to NSI's Mot. to Dismiss Mustafa's Complaint in Ill. Human Rights Comm'n, attached as Ex. K to the Labuda Decl, ¶ 5 (stating that, "On February 18, 2011, based upon the inexplicable February 4, 2011 dismissal, Mustafa entered into a settlement agreement . . . with NSI." ).  NSI states that under the terms of the Settlement Agreement, it agreed to pay Mustafa $60,000, payable in three installments of $20,000 each on July 29, August 20, and September 20, 2011, respectively.  Pl.'s 56.1 Stmt. ¶ 13; *see* FAC, Ex. A; Labuda Decl., Ex. K, ¶ 6.  Defendant asserts that "a valid, enforceable agreement does not exist, and the alleged settlement agreement, if it does exist, is void for fraud . . ."  *See* Def.'s 56.1 Stmt. ¶ 12.  Although Mustafa maintains that one or more of the checks may not have been timely received, she does not dispute that NSI made each of the three installment payments totaling $60,000.  *See* Pl.'s 56.1 Stmt. ¶ 14; Def.'s 56.1 Stmt. ¶ 14; *see* copies of cancelled HSBC checks issued to Mustafa's attorney, attached as Ex. L to the Labuda Decl.[4]

NSI contends that, under the terms of the Settlement Agreement, Mustafa agreed to withdraw any claims or appeals before the IDHR, the Illinois Department of Labor, and the Eastern District federal court.  Pl.'s 56.1 Stmt. ¶ 15; FAC, Ex. A.  While Mustafa disputes NSI's characterization and the reasons for her continued pursuit of her claim, the parties agree that Defendant did not withdraw her request for review of the February 4, 2011 IDHR dismissal of her retaliation complaint in case number 2010CF2063.  Pl.'s 56.1 Stmt. ¶ 17; Def.'s 56.1 Stmt. ¶ 17.

On August 8, 2012, the Illinois Human Rights Commission vacated the dismissal of Mustafa's Charge of Discrimination regarding the alleged retaliation, reinstated it, and remanded

---

[4]     Apparently, Defendant was represented by counsel Alan Serrins & Associates during this time.

it to the IDHR for entry of a finding of substantial evidence.  Pl.'s 56.1 Stmt. ¶ 17; Def.'s 56.1

Stmt. ¶ 17; Aug. 8, 2012 Order of Ill. Human Rights Comm'n, attached as Ex. M to the Labuda

Decl.; Def.'s Decl., Ex. C, Attachment 1.  Subsequently, the IDHR notified Mustafa that if she

wished for the agency to file a complaint with the Illinois Human Rights Commission, she

needed to notify IDHR in writing.  Pl.'s 56.1 Stmt. ¶ 18; Def.'s 56.1 Stmt. ¶ 18; August 9, 2012

Notice of Substantial Evidence letter from Ill. Dep't of Human Rights, attached as Ex. N to the

Labuda Decl.  Mustafa points out that attorneys for NSI also received the "Notice of Substantial

Evidence."  Def.'s 56.1 Stmt. ¶ 18; *see* Labuda Decl., Ex. L.

On August 20, 2012, Mustafa requested in writing that the IDHR file a complaint with

the Illinois Human Rights Commission on her behalf.  Pl.'s 56.1 Stmt. ¶ 20; Def.'s 56.1 Stmt.

¶ 19; Compl. filed with Ill. Human Rights Comm'n on Sept. 28, 2012, annexed as Ex. O to the

Labuda Decl., ¶ 1.  NSI argues that this action constitutes a breach of the Settlement Agreement.

Pl.'s 56.1 Stmt. ¶ 20.  Mustafa disputes NSI's contention.  Def.'s 56.1 Stmt. ¶¶ 19-20.

On September 28, 2012, the IDHR filed a complaint on Mustafa's behalf with the Illinois

Human Rights Commission (ALS No. 12-0574).  Pl.'s 56.1 Stmt. ¶ 21; Def.'s 56.1 Stmt. ¶ 21.

NSI maintains that Mustafa repeatedly breached the Settlement Agreement by pursuing the

action against NSI before the Illinois Human Rights Commission and taking numerous

affirmative steps to litigate that action, as outlined more fully in Section V(C), *infra*.  *See* Pl.'s

56.1 Stmt. ¶¶ 22-27.  Mustafa disagrees and states that NSI failed to file a timely verified

Answer to the Illinois Human Rights Commission and should have been declared in default; that

Mustafa had the right to add additional parties to her complaint before the Illinois Human Rights

Commission; that the Chief Legal Counsel of the Illinois Human Rights Commission changed

the wording in Mustafa's Petition for Emergency Relief to deny Mustafa the necessary certification to bring the petition before this Court; and that Mustafa filed her objections to NSI's motion to dismiss the matter before the Illinois Human Rights Commission because NSI's motion should never have been permitted in the first place since it was untimely. *See* Def.'s 56.1 Stmt. ¶¶ 21-24, 26-27.

On March 7, 2013, the Illinois Human Rights Commission (i) dismissed Mustafa's complaint in ALS No. 12-0574, with prejudice, as barred by the Settlement Agreement; (ii) deemed the complaint frivolous; and (iii) ordered Mustafa to pay NSI's reasonable attorneys' fees and costs in defending the action. Pl.'s 56.1 Stmt. ¶ 28; Mar. 7, 2013 Recommended Liability Determination of the Ill. Human Rights Comm'n, attached as Ex. U to the Labuda Decl. Mustafa has filed objections to the recommendations of the Commission and has requested a rehearing before a different administrative law judge. Def.'s 56.1 Stmt. ¶ 28. NSI asserts that it has been damaged as a result of Mustafa's breach of the Settlement Agreement. Pl.'s 56.1 Stmt. ¶ 29; Labuda Decl. ¶ 24. Mustafa argues that NSI cannot collect attorney's fees since NSI's counsel failed to appear in the Illinois Human Rights Commission proceeding. Def.'s 56.1 Stmt. ¶ 29.

## III. PROCEDURAL HISTORY

On November 8, 2012, NSI filed its Complaint in the instant action. Compl. DE 1. Shortly thereafter, NSI filed the FAC asserting a claim for breach of contract. *See* FAC [DE 9]. NSI requests, *inter alia*, that (i) Mustafa return the $60,000 paid to her, together with attorneys' fees and costs incurred in enforcing the Settlement Agreement and defending the charge before the Illinois Human Rights Commission; and (ii) an Order directing Mustafa to comply with the

Settlement Agreement.  FAC ¶ 30; FAC Prayer for Relief ¶¶ 2, 4.  Defendant Mustafa moved to dismiss the action [DE 7, 19]; however, Judge Bianco denied Mustafa's motion [DE 21] and set a briefing schedule for NSI's motion for summary judgment [DE 26].

After the motion for summary judgment was fully briefed, Mustafa filed a surreply. Def.'s Supp. Mem. of Law in Opp. to Pl.'s Mot. for Summary Judgment ("Def.'s Supp. Mem.") [DE 44].  NSI moved to strike the surreply as improper.  DE 43.  Judge Bianco denied the motion to strike, but granted NSI leave to file a surreply to Mustafa's surreply.  *See* Electronic Order, May 16, 2013.  NSI filed a further reply in support of its motion on May 30, 2013.  Pl.'s Supp. Reply Letter ("Pl.'s Supp. Let.") [DE 46].

On August 22, 2013, Mustafa filed a request for leave to file a motion for sanctions and to strike the FAC based on the alleged misconduct of NSI's counsel.  DE 48.  NSI's counsel opposes the motion.  DE 48.  The motions are now ripe for review.

## IV.    STANDARD OF REVIEW ON SUMMARY JUDGMENT

Fed. R. Civ. P. 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).

Where the movant shows a prima facie entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id.*; *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Dobbs v. Dobbs*, No. 06-CV-6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal quotation marks omitted).

"When the party opposing summary judgment is *pro se,* the Court must read that party's papers liberally and interpret them 'to raise the strongest arguments that they suggest.'" *Ayazi v. United Fed'n of Teachers, Local 2*, No. 99 CV 8222, 2011 WL 888053, at *6 (E.D.N.Y. Mar. 14, 2011) (quoting *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999)). "[H]owever, a *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Ayazi*, 2011 WL 888053, at *6 (citing *Thompson v. Tracy*, No. 00 CV 8360, 2008 WL 190449, at *5 (S.D.N.Y. Jan.17, 2008)); *Chiari v. N.Y. Racing Ass'n,*

*Inc.*, --- F. Supp. 2d ---, 2013 WL 4234242, at *11 (E.D.N.Y. Sept. 16, 2013).  With the foregoing principles in mind, the Court now turns to an analysis of NSI's claims.

## V.  DISCUSSION

NSI's only remaining cause of action in the FAC is for breach of contract.[5]  Under New York law, [6] the elements of a cause of action for breach of contract are (i) the existence of a contract, (ii) performance of the contract by one party, (iii) breach by the other party, and (iv) damages suffered as a result of the breach.  *See Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *Beautiful Jewellers Private Ltd. v. Tiffany Co.*, 438 Fed. App'x 20, 21-22 (2d Cir. 2011) (citing *First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)); *J&H Holding Co., LLC v. Kloss*, No. 12-CV-5738, 2013 WL 6048815, at *3 (E.D.N.Y. Nov. 13, 2013).  "Under New York law, the construction of an unambiguous contract is a matter of law, appropriate for summary judgment resolution."  *Chevron TCI, Inc. v. Talleyrand Assocs., LLC*, No. 03 Civ. 4043, 2003 WL 22977498, at *5 (S.D.N.Y. Dec. 19, 2003) (citing *Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 85 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment.")); *see*

---

[5]     At the time of the filing of the FAC, Plaintiff also requested (i) an order directing Defendant to withdraw the complaint pending before the Illinois Human Rights Commission (ALS No. 12-0574); and (ii) a stay of the matter pending before the Illinois Human Rights Commission (ALS No. 12-0574).  Those issues appear to be moot at this juncture.

[6]     New York law governs the Settlement Agreement here.  *See* FAC, Ex. A ¶ 15 ("This Agreement shall be governed by the law of the State of New York, without regard to the choice-of-law or conflicts-of-law principles of any jurisdiction.").

*also Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) (same). The Court examines below each of the four factors necessary for a breach of contract claim.

## A. Whether a Contract Existed Between the Parties

NSI argues that the parties entered into a valid and binding Settlement Agreement. Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") [DE 34] at 7. Significantly, Mustafa initially acknowledges that there was in fact an agreement between the parties:

> Here, there is no dispute about the existence of an agreement. Rather, the parties' disputes turn on (1) the interpretation of provisions of the Agreement and factual questions whether defendants have breached its terms. To give effect to the intent of the parties, a court must interpret a contract by considering all of its provisions and words and phrases should be given their plain meaning . . . . A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties.

*See* Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. [DE 36] ("Def.'s Opp.") at 5 (citations and quotations omitted). Mustafa follows by setting forth a number of cases from courts in the Second Circuit which discuss ambiguity and the lack of ambiguity in contract language. *See* Def.'s Opp. at 6. As Mustafa moves into the "Argument" portion of her opposition, she raises contentions that certain terms of the Settlement Agreement are "confusing and ambiguous." *Id.* at 8. According to Mustafa, the agreement is also unenforceable due to fraud. *Id.* at 10. NSI points out that Defendant has previously acknowledged (i) the existence of the Settlement Agreement before the Illinois Human Rights Commission; and (ii) that certain provisions of the Settlement Agreement are unambiguous. *See* Pl.'s Mem. at 8 (citing Labuda Decl., Ex. K ¶¶ 5-8).

The Court has carefully reviewed and considered the Settlement Agreement as well as the parties' arguments. Having done so, the Court finds that the parties entered into an agreement which both sides executed – Mustafa on July 15, 2011 and NSI on July 25, 2011 (by its President, Frank Landi). *See* Labuda Decl., Ex. A; FAC, Ex. A. Defendant Mustafa has not introduced sufficient evidence to show that there is a material issue of fact regarding the existence of the Settlement Agreement. Pursuant to the terms of the Agreement, NSI was to (i) pay Mustafa $60,000 in three equal installments of $20,000 each; and (ii) provide Mustafa with a neutral letter of reference. *Id.* at 1-2. In exchange, Mustafa agreed:

- not to commence, continue, assist or participate in any lawsuit, charge, claim or proceeding in any form against NSI (*id.* at 2);

- to settle all claims she had or may have against NSI arising out of or relating to any allegation or claim concerning Mustafa's employment (*id.*);

- that NSI was not admitting any wrongdoing (*id.* at 2-3);

- to keep the terms of the agreement confidential (*id.* at 3);

- to waive her right to reemployment with NSI (*id.* at 3-4);

- not to disparage NSI (*id.* at 4);

- that she was represented throughout the negotiation and execution of the Settlement Agreement by an attorney of her choice (*id.* at 10);

- that the agreement represents the entire agreement between Mustafa and NSI (*id.* at 5-6); and

- to withdraw her claims including any appeals she filed in Illinois immediately upon execution of the Settlement Agreement (*id.* at 6).

The Court notes that "[c]ontract language is not ambiguous if it has a 'definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion.'"

*Chevron*, 2003 WL 22977498, at *6 (citing *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)); *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 54 (2d Cir. 2012). Here, the Settlement Agreement was signed by both parties and the terms are clear, straightforward, and unambiguous. Notwithstanding her arguments, Mustafa does not provide sufficient evidence of fraud, ambiguity, or that the "material terms [of the Agreement were] not agreed to." Def.'s Supp. Opp. at 6. Mustafa's effort to capitalize on what she characterizes as NSI's counsel using the wrong terminology (*i.e.*, "verified complaint" versus "charge" and "appeal" versus "request for review") is unavailing, as is her conclusion that NSI "is generally ambiguous as to its intent in the agreement." Def.'s Opp. at 8. Accepting that logic would place form over substance. The terms noted above reflect no such ambiguity. As such, the Court finds that there is no material issue of fact with respect to the existence of an agreement here.

### B. Performance of the Contract by NSI

It is undisputed that NSI made each of the three installment payments to Mustafa totaling $60,000 as required under the Settlement Agreement. *See* Pl.'s 56.1 Stmt. ¶ 14; Def.'s 56.1 Stmt. ¶ 14; *see* Labuda Decl., Ex. L. However, Mustafa argues that NSI intentionally failed in its obligation to provide her with a neutral letter of reference. Def.'s Opp. at 7-8 7; Def.'s 56.1 Stmt. ¶ 13. Mustafa contends that this omission constitutes a breach of a material term of the Settlement Agreement and precludes a grant of summary judgment. Def.'s Opp. at 7-8. NSI appears to concede that it did not provide the letter of reference until after it received Mustafa's

opposition to the instant motion.[7]  Pl.'s Reply Mem. at 5.  However, NSI argues that (i) the

provision of the reference letter was not a material term of the Settlement Agreement; and

(ii) Plaintiff substantially performed under the Settlement Agreement.  Pl.'s Reply Mem. at 3-6.

"Under New York law, a party's performance under a contract is excused where the other

party has substantially failed to perform its side of the bargain or, synonymously, where that

party has committed a material breach."  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500

F.3d 171, 186 (2d Cir. 2007); *Rivera Finance of Texas, Inc. v. Capgemini US, LLC*, 511 Fed.

App'x 92, 94 (2d Cir. 2013); *Barbagallo v. Marcum LLP*, 925 F. Supp. 2d 275, 287 (E.D.N.Y.

2013).  In assessing whether NSI's alleged breach provides a complete excuse to Mustafa's

alleged breach, the relevant question therefore becomes whether NSI materially breached the

Settlement Agreement.  *See Merrill Lynch*, 500 F.3d at 186; *Rivera*, 511 Fed. App'x at 94;

*Barbagallo*, 925 F. Supp. 2d at 287.

"A breach is material in New York if it 'go[es] to the root of the agreement between the

parties.'"  *Barbagallo*, 925 F. Supp. 2d at 287 (alteration in original) (quoting *Frank Felix*

*Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 286 (2d Cir. 1997)).  A material breach is "one

which . . . is so substantial as to defeat the purpose of the entire transaction."  *Rivera*, 511 Fed.

App'x at 95 (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 895 (2d Cir. 1976)

(internal quotations omitted); *see Frank Felix Assocs.*, 11 F. 3d at 289 (a party's obligation to

perform is excused if "the other party's breach of the contract is so substantial that it defeats the

---

[7]    On May 6, 2013, NSI's counsel filed a declaration with the Court, with an exhibit
attached to it.  *See* May 6, 2013 Declaration of Jamie S. Felson, Esq., in Further Support of NSI's
Mot. for Summ. J. [DE 40] ("Felson Decl.").  Exhibit A annexed to the Felson Declaration is a
copy of the neutral reference letter provided to Mustafa on April 26, 2013.

object of the parties in making the contract"); *see also Barbagallo*, 925 F. Supp. 2d at 287 (same).

In general, material terms of a contract include subject matter, price, payment terms, quantity, duration, compensation, and the dates of delivery and production. *See Local 977, Intern. Broth. of Teamsters v. N.L.R.B.*, 577 F.3d 70, 74 (2d Cir. 2009) (citing 17A Am. Jur. 2d Contracts § 1990 (2004)); *Allen v. Robinson*, No. 10 Civ. 7118, 2011 WL 5022819, at *5 (S.D.N.Y. Oct. 19, 2011) ("Material terms of a contract that require definition include time, manner of performance and payment schedule.") (citation and quotation marks omitted). However, "[t]here is no simple test for determining whether substantial performance has been rendered and several factors must be considered, including the ratio of the performance already rendered to that unperformed, the quantitative character of the default, the degree to which the purpose behind the contract has been frustrated, the willfulness of the default, and the extent to which the aggrieved party has already received the substantial benefit of the promised performance." *Barbagallo*, 925 F. Supp. 2d at 287 (citing *Hadden v. Consol. Edison Co. of N. Y., Inc.*, 34 N.Y.2d 88, 96, 356 N.Y.S.2d 249, 312 N.E.2d 445 (N.Y. 1974) (internal quotations omitted)); *see also Belsito Comms., Inc. v. Dell, Inc.*, No. 12-CV-6255, 2013 WL 4860585, at *7 (S.D.N.Y. Sept. 12, 2013). "While the issue of substantial performance is typically one of fact, 'if the inferences are certain, the question involves only a matter of law and is to be decided by the court.'" *Rivera*, 511 Fed. App'x at 95 (citing *Anderson Clayton & Co. v. Alanthus Corp.*, 91 A.D.2d 985, 985, 457 N.Y.S.2d 578, 578 (2d Dep't 1983)); *accord Merrill Lynch*, 500 F.3d at 187.

In support of its position that it has not materially breached the agreement, NSI asserts the following arguments:  (i) the Settlement Agreement explicitly established only one material term: confidentiality of the terms of the Settlement Agreement; (ii) payment of the $60,000 constitutes substantial performance of the Settlement Agreement, sufficiently providing relief to Mustafa for alleged employment practice violations; (iii) after execution of the Settlement Agreement on July 15, 2011, Mustafa never mentioned that NSI failed to provide her with the neutral letter of reference until over 1.5 years later; (iv) NSI in fact provided the neutral letter of reference to Mustafa on April 26, 2013, upon receipt of her opposition papers to the instant motion; and (v) NSI's failure to provide the reference letter was not willful.  *See* Pl.'s Reply Mem. at 4-5; *see* Felson Decl. ¶ 3 and Ex. A.

Mustafa counters, in sum, that:  (i) NSI's failure to provide her with a letter of reference was intentional and malicious and constitutes a material breach of the Settlement Agreement; (ii) NSI has disparaged her reputation to a premier toy industry recruiter; (iii) part of the "payment" she was entitled to receive under the terms of the Settlement Agreement was a neutral letter of reference, and "payment, by NSI's own admission, is a material term;" (iv) the value of a neutral letter of reference far outweighs monetary compensation, and the letter of reference is in fact worth $675,000 to her; (v) she had no obligation to remind NSI to provide her with the letter; (vi) although she received an email from NSI's counsel on April 26, 2013, she "has never viewed the attachment to know if it is a neutral letter of reference;" and (vii) even if a neutral letter of reference was provided, it is meaningless today.  Def.'s Supp. Mem. at 6-10.

With regard to "material" terms, the Settlement Agreement states as follows:

> Confidentiality of the terms of this Agreement is of the utmost importance to defendants.  ***Therefore, the parties agree that the***

17

> *confidentiality provision contained in this paragraph is a*
> *material term of this Agreement.*

FAC, Ex. A ¶ 5(b) (emphasis added). Having examined the entire Settlement Agreement, the

Court finds that the foregoing provision is the only instance of the phrase "material term" being

used in the entire document. To that extent, the Court agrees with NSI that the "Confidentiality"

section described as being "of the utmost importance to defendants" is the only provision

utilizing such language. *Id.* However, the argument does not end there. Just because the

Settlement Agreement makes only a single reference to "material term" does not mean that there

are no other material terms in that agreement. The Court takes note of other legally recognized

definitions of "material term." For example, *Black's Law Dictionary* defines "material terms" as

> [a] contractual provision dealing with a significant issue such as
> subject matter, price, payment, quantity, quality, duration, or the
> work to be done.

Black's Law Dictionary 1608 (9th ed. 2009); *see* 17A Am. Jur. 2d Contracts § 1990 (2014) ("In

order to be enforceable, a contract must be sufficiently definite as to its 'material terms,' which

include, e.g., subject matter, price, payment terms, quantity, duration, compensation, and the

dates of delivery and production . . . .").

Neither NSI nor Mustafa here would likely argue that the $60,000 sum stated in Section 1

("Payment") of the Settlement Agreement does not constitute payment, and, therefore, in

accordance with the definitions provided above, is clearly a "material term" of the Settlement

Agreement – regardless of whether it is designated specifically in that language in the

agreement. Where the parties differ is in their respective characterizations of the neutral letter of

reference. The fact that the neutral letter falls under subdivision "d" of Section 1 – "Payment" –

is seized upon by Mustafa to support her argument that the letter is a material term and the

failure to issue the letter was a material breach of the agreement. Def.'s Supp. Mem. at 7.

However, location of the term itself in the Agreement is not the determinative factor. Mustafa

claims that the neutral letter is a form of payment, or is interchangeable with money. However,

the few courts which have looked at this issue approach such letters as equitable in nature in

requiring defendants to produce them. *See Gilster v. Primebank, Inc*., 884 F. Supp. 2d 811, 867

(N. D. Iowa 2012); *Hampton v. ITT Commc'ns Sys. Div.*, No. 1:10 CV 291, 2012 WL 2064510,

at *8 (N.D. Ind. June 7, 2012).

     Moreover, one court in this District, albeit in the context of employment discrimination

and retaliation claims, found the defendant's agreement to provide a reference letter to be a

contractual term. *See Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 348-349

(E.D.N.Y. 2009). In *Memnon*, the court was called upon to review a settlement agreement in

which the employer had consented to provide plaintiff "with a letter of recommendation

substantially in the form of a letter attached hereto as Exhibit A." *Memnon*, 667 F. Supp. 2d at

348. The employer argued that the parties had not agreed to the form or content of any letter of

recommendation or reference at the time the settlement agreement was executed and none was

attached to the agreement. *Id.* However, the court found unpersuasive the employer's argument

that the letter never became part of the agreement, holding instead that the terms "attached hereto

as Exhibit A" would have "referred unambiguously to any document that was attached as

Exhibit A." *Id.* at 349 n. 13. The court then held that the unambiguous language of the

settlement agreement reflected that it was the parties' intent that the employer would provide a

letter to the plaintiff. *Id.* at 348. As such, the court interpreted the letter to be a material term of

the agreement.

The Court will assume, *arguendo*, that the neutral letter was a material term of the July 2011 Settlement Agreement in that it was part of the subject matter of the Agreement, *see Local 977*, 577 F.3d at 74, and could be construed as describing some portion of the manner of performance, *see Allen*, 2011 WL 5022819, at *5. Likewise, notwithstanding the materiality of the confidentiality term, NSI was clearly obliged to (i) pay Mustafa $60,000; and (ii) provide Mustafa with a neutral letter of reference. However, Mustafa has not sufficiently established that NSI's failure to timely provide the neutral reference letter was "so substantial as to defeat the purpose of the entire transaction." *See Lipsky*, 551 F.2d at 895; *Rivera*, 511 Fed. App'x at 95; *Frank Felix Assocs.*, 11 F. 3d at 289; *Barbagallo*, 925 F. Supp. 2d at 287. NSI agreed to pay Mustafa $60,000 and has introduced evidence that these payments were made. *See* Labuda Decl., Ex. L. Mustafa has conceded that she was paid the $60,000. Def.'s 56.1 Stmt. ¶ 14. Mustafa, however, provides no support for her contention that the letter of reference constitutes monetary payment equivalent to $675,000, or any other proof of the value of the letter (*i.e.*, evidence that she has been unable to find employment due to the fact that she had not received the letter). *See Memnon*, 667 F. Supp. 2d at 349 (plaintiff presented no evidence that any interference or communication with third-party employers ever happened). Based on the evidence presented by NSI (and the lack of evidence provided by Mustafa), the Court finds that "the ratio of the performance already rendered" is greater than that which is unperformed, and Mustafa "has already received the substantial benefit of the promised performance," *i.e.*, the $60,000 to compensate her for the alleged employment discrimination. *See Barbagallo*, 925 F. Supp. 2d at 287; *Hadden*, 34 N.Y.2d at 96; *Belsito Comms.*, 2013 WL 4860585, at *7.

NSI represents that its failure to provide the letter of reference was inadvertent. Moreover, NSI's counsel provided a copy of a neutral letter of reference to Mustafa on April 26, 2013, tending to show that the default was not willful. This factor weighs against a finding of material breach. *See Barbagallo*, 925 F. Supp. 2d at 287; *Hadden* 34 N.Y.2d at 96. Mustafa has provided only conclusory statements that NSI's omission was willful and/or malicious. Looking to the terms of the Agreement, once again, the Court takes note that no time-frame is stated for NSI to provide Mustafa with the neutral reference letter in Section 1(d) nor anywhere else in the document. FAC, Ex. A. The Court finds it peculiar and perplexing, assuming the neutral letter of reference was as important to Mustafa as she has represented, why Mustafa would not have: (i) demanded that NSI provide her with the letter at the time of or shortly after executing the Settlement Agreement (even if the Settlement Agreement did not obligate her to do so); (ii) raised the issue for more than a year after the agreement was signed; or (iii) reviewed the letter when it was (belatedly) provided to her. Instead, Mustafa took the $60,000 payment and never returned it; nor did she notify NSI that she considered NSI to be in breach of the Settlement Agreement by not providing the neutral reference letter. Further, Mustafa does not explain why the letter is now "meaningless," since, at a minimum, it confirms her period of employment with NSI, which presumably has some value with regard to future employment. Finally, Mustafa has not shown that NSI has disparaged her reputation such that the alleged disparagement constitutes a material breach of the Settlement Agreement. In addition, Mustafa has not pointed to any case in which a court in this Circuit has determined that a neutral letter of reference is a form of payment or has a monetary value attached to it. Consequently, the evidence submitted by Defendant is not sufficient to show that NSI's failure to provide her with

the letter of reference was "so substantial as to defeat the purpose of the entire transaction." *Rivera*, 511 Fed. App'x at 95; *Lipsky*, 551 F.2d at 895; *Frank Felix Assocs.*, 11 F.3d at 289.

In sum, NSI has submitted sufficient evidence to make a *prima facie* showing that it substantially performed under the Settlement Agreement. Conversely, Mustafa has not pointed to "specific evidence in the record" to support her contention that NSI's failure to provide the letter of reference constitutes a material breach of the Settlement Agreement. *See Salahuddin*, 467 F.3d at 273; *McPherson*, 457 F.3d at 215 n.4. Thus, based on the relevant case law and the parties' submissions, Mustafa has not adequately demonstrated that there is a genuine dispute as to a material fact with respect to NSI's performance under the Settlement Agreement, and, as a matter of law, NSI has substantially performed under the Agreement. *See Frank Felix Assocs.*, 111 F.3d at 286 (finding no material breach under New York law where defendant failed to return item to plaintiff in a timely fashion as required under a settlement agreement, when defendant had paid plaintiff $50,000 as required); *see also Church Ave. Merchants Block Ass'n, Inc. v. State of N.Y.*, 35 Misc.3d 1231(A), 953 N.Y.S.2d 549 (Table) (N.Y. Ct. Cl. 2011) (finding substantial performance where services under contract were performed and failure to timely submit a document was minor and unintentional).

### C. Mustafa's Alleged Breach

NSI maintains that Mustafa breached the Settlement Agreement in a number of ways. First, under the terms of the Settlement Agreement, Mustafa agreed to:

> withdraw her claims including any appeals filed with the Illinois Department of Human Rights (case nos. 2009CN2698 and 2010CF2063) and the Illinois Department of Labor (case no. 09-005080) and her counterclaim in the United States District Court Eastern District of New York (case no. 09-CV-1536).

22

FAC, Ex. A at 6.  Further, Mustafa agreed to

> . . . not hereafter directly or indirectly commence, continue, assist
> or participate in any lawsuit, charge, claim or proceeding, in any
> forum (including but not limited to any court or agency), against
> NSI arising out of or relating to any allegation or claim (whether
> MUSTAFA's or any other person's) concerning MUSTAFA's
> employment with NSI or any of its parents, subsidiaries or
> affiliates, unless directed by court order or subpoena.

FAC, Ex. A at 2.  NSI argues that Mustafa breached these provisions by (i) failing to withdraw

her request for review of the February 4, 2011 IDHR's dismissal of her retaliation complaint in

case number 2010CF2063; and (ii) requesting in writing that the IDHR file a complaint with the

Illinois Human Rights Commission on her behalf.  Pl.'s Mem. 9-11.

NSI also claims that Mustafa repeatedly breached the Settlement Agreement in the

November 8, 2012 proceeding before the Illinois Human Rights Commission, in the following

ways:

- Mustafa opposed NSI's motions for additional time to respond to Mustafa's
  complaint and to be admitted *pro hac vice*.  Pl.'s 56.1 Stmt. ¶ 22; Mustafa's
  Opposition, attached as Ex. P to the Labuda Decl.

- On November 8, 2012, Mustafa submitted a motion to hold NSI in default.  Pl.'s 56.1
  Stmt. ¶ 23; Mustafa's Motion for Default, attached as Ex. Q to the Labuda Decl.

- On November 8, 2012, Mustafa filed a motion to amend the complaint filed with the
  Illinois Human Rights Commission to add additional parties to the complaint.  Pl.'s
  56.1 Stmt. ¶ 24; Mustafa's Motion to Amend Complaint to Add Parties, attached as
  Ex. R to the Labuda Decl.

- On or about January 3, 2013, Mustafa filed an "emergency motion."  Pl.'s 56.1 Stmt.
  ¶ 25;  Mustafa's Emergency Motion, attached as Ex. S to the Labuda Decl.

- On or about January 3, 2013, Mustafa filed a Petition for Temporary Relief.  Pl.'s
  56.1 Stmt. ¶ 26; Mustafa's Petition for Temporary Relief, attached as Ex. T to the
  Labuda Decl.

- On January 9, 2013, Mustafa also filed an opposition to NSI's motion to dismiss the complaint filed with the Illinois Human Rights Commission. Pl.'s 56.1 Stmt. ¶ 27.

Based on the foregoing allegations supported by the documentary evidence in the record, NSI has met its burden to show that Mustafa breached the Settlement Agreement.

Mustafa counters that (i) she was not obligated to withdraw her request for review of the Illinois Human Rights Department decision because a "request for review" is not a "claim" or an "appeal," but rather is similar to a request for *certiorari*; (ii) pursuant to the administrative code governing the Illinois Human Rights Commission, she was procedurally unable to withdraw her charge; (iii) although she could have withdrawn her charge before the complaint was filed with the Commission, "she knew the law had not been correctly applied" when the original action was dismissed; (iv) the filing of the complaint before the Commission was a result of her simply following the Commission's directives, and was due in part to NSI's refusal to participate in a conciliation process before the Commission; and (v) NSI has admitted all of the allegations in the complaint before the Commission. Def.'s Opp. at 8-12. The Court examines each of Mustafa's arguments below.

Mustafa appears to argue that a "request for review" is not encompassed by the Settlement Agreement because it is not a "charge," "claim," or "appeal," which are the terms of art used in the Settlement Agreement. *See* Def.'s Opp. at 8. NSI contends that Mustafa's "request for review," regardless of the terminology used, is functionally an appeal of the IDHR's decision previously dismissing Mustafa's charge of discrimination against NSI. Pl.'s Reply Mem. at 6.

The Court finds NSI's interpretation more persuasive. Mustafa requested that the Illinois Human Rights Commission review a determination made by the IDHR, which the Commission

has authority to overrule or affirm. However, even accepting Mustafa's argument as true, the Settlement Agreement also more broadly prohibits Mustafa from participating in *any* "proceeding" against NSI in *any* forum. FAC, Ex. A at 2. Mustafa clearly breached this provision by appearing before the Illinois Human Rights Commission in the proceeding against NSI. *See id.* In that action, Mustafa opposed every motion filed by NSI and filed several of her own motions, as outlined above. Further, under Section 9 of the Settlement Agreement, Mustafa agreed to release and forever discharge NSI for all claims under, *inter alia*, Illinois anti-discrimination laws. FAC, Ex. A at 5. In addition, in Section 2 of the Settlement Agreement, Mustafa agreed that all of her claims or potential claims against NSI had been settled, satisfied, and resolved. *Id.* at 2. Accordingly, Mustafa's argument here does not raise any material issue of fact sufficient to defeat summary judgment.

Mustafa also contends she was unable to withdraw her request for review of the IDHR decision for procedural reasons, *i.e.*, a request for review may only be withdrawn (i) prior to the filing of a complaint based on the charge; or (ii) dismissal of the charge. Def.'s Opp. at 9. Mustafa then acknowledges that she *could have* withdrawn her request for review prior to the Illinois Human Rights Commission ruling on that request. *Id.* Indeed, the Settlement Agreement was fully executed on July 25, 2011. FAC, Ex. A at 7. The Settlement Agreement required Mustafa to "immediately" withdraw her claims. *Id.* There was nothing preventing Mustafa – no rule, no regulation, no law – from simply communicating with the Illinois Human Rights Commission to advise what had happened in the federal court action. The Illinois Human Rights Commission ruled on Mustafa's request for review on August 8, 2013, more than one year after the execution of the Settlement Agreement. *See* Labuda Decl., Ex. M. Thus, Mustafa was

procedurally able to withdraw her claims for over a year, prior to the Commission's decision on her request for review having been issued. She chose not to do so.

According to Mustafa, she continued to pursue her claims because she uncovered new (unspecified) information which led her to believe that she was the victim of fraud. Def.'s Opp. at 9-10. She further argues that the Illinois Human Rights Commission allegedly ruled that the correct law was not applied to her claim, and, thus, she was not required to withdraw her request for review as required under the Settlement Agreement. Mustafa has cited no support for this proposition and has introduced no evidence of NSI's purported fraud. Consequently, the Court finds Mustafa's arguments on this issue wholly unpersuasive. However, even accepting Mustafa's averments as true, she nonetheless breached the Settlement Agreement by, *inter alia*, requesting that the IDHR file a complaint with the Illinois Human Rights Commission on her behalf, and by participating in the proceeding before the Illinois Human Rights Commission. Thus, Mustafa's arguments here do not raise any issue of material fact which would preclude the entry of summary judgment in favor of NSI.[8]

Further, Mustafa maintains that the filing of the complaint before the Illinois Human Rights Commission was a result of her simply following the Commission's orders, and was due

---

[8]    In her motion for sanctions and to strike the FAC, Mustafa (belatedly) argues that she in fact did attempt to withdraw all claims filed with the IDHR. Def.'s Letter Motion ("Def.'s Let. Mot.") [DE 36] at 2. Mustafa has submitted a letter from her then-attorney Alan Serrins dated August 1, 2011 and stamped "received" at the Illinois Department of Labor, Chicago Office, on August 5, 2011. The letter does in fact request that Mustafa's claims be withdrawn. NSI's counsel maintains that he never received a copy of the letter, which was apparently sent to his former suite number. Pl.'s Opp. to Def's Mot. for Sanctions ("Pl.'s Opp.") [DE ] at 2. However, even accepting Mustafa's arguments as true, Mustafa still breached the Settlement Agreement in the first instance by requesting that the IDHR file a complaint with the Illinois Human Rights Commission on her behalf, and by participating in the proceeding before the Commission. Therefore, Mustafa's arguments still do not raise any issue of material fact which would preclude summary judgment in favor of NSI.

in part to NSI's refusal to participate in a conciliation process before the Commission. Def.'s Mem. at 10-11. Specifically, Mustafa argues that the Notice of Substantial Evidence vacating the dismissal of her discrimination charge was an "order" obligating her to proceed with the complaint process. *Id.* NSI asserts that (i) Mustafa had no obligation to request that a complaint be filed on her behalf; (ii) NSI was under no obligation to undergo conciliation; and (iii) the filing of the complaint was a direct result of Mustafa's own request and constitutes a breach of the Settlement Agreement. Pl.'s Reply Mem. at 8-10

The Notice of Substantial Evidence which was forwarded to NSI's counsel and Mustafa states the following:

> Within fourteen (14) days of receipt of this notice of Substantial Evidence, notify the Department in writing *if you wish to file a complaint* with the Human Rights Commission . . . .
>
> The Illinois Human Rights Act ("Act") *permits* the Department to conduct conciliation to give the parties an opportunity to settle the case before a complaint is filed with the Commission. Conciliation is a process in which a Department Staff Attorney facilitates settlement discussions with both parties via telephone. *If* you notify the Department to file a complaint with the Commission, I have been designated by the Director to CONCILIATE this case.

Labuda Decl., Ex. N (emphasis added). The language of the Notice of Substantial Evidence makes clear that Mustafa was not *obligated* to request that the IDHR file a complaint on her behalf. *See id.* Further, it appears that the conciliation process does not even occur until after a party has requested that a complaint be filed. *See id.* Moreover, even where Mustafa requested that a complaint be filed on her behalf, NSI's choice not to participate in a conciliation process in light of the Settlement Agreement was reasonable under the circumstances. Ultimately, pursuant to the terms of the Notice of Substantial Evidence, Mustafa was not *obligated* to request that the

IDHR file a complaint on her behalf. She could have chosen to take no action, which was the proper course under the terms of the Settlement Agreement. Even assuming that the Notice of Substantial Evidence *required* Mustafa to request that a complaint be filed on her behalf, Mustafa had already breached the Settlement Agreement by failing to withdraw her request for review and by participating in the proceedings against NSI, as detailed above. As such, even accepting Mustafa's contentions here as true, Mustafa has not raised any material issue of fact to preclude the entry of summary judgment in favor of NSI.

Finally, Mustafa claims that, once the charge of discrimination was reinstated by the Illinois Human Rights Commission, she could not withdraw it because she would be permitting NSI to escape liability for unlawful discrimination and unlawful failure to pay wages. Def.'s Opp. at 9. Mustafa maintains that NSI has admitted it discriminated against her (*id.* at 11-12), an allegation that NSI disputes (Pl.'s Reply Mem. at 11). In any event, the Court notes that settlement agreements are routinely entered into by defendants who may be liable for violations of law. *See, e.g., Archer v. Warner*, 538 U.S. 314, 123 S.Ct.1462 (2003) (noting that settlement agreement required defendant to pay the plaintiff $300,000 as compensation for emotional distress and personal injury damages); *Central States Southeast and Southwest Areas Health and Welfare Fund v. Mereck-Medco Managed Care, LLC*, 433 F.3d 181, 202 n.11 (2d Cir. 2005) (noting that Settlement Agreement referred to defendants' alleged wrongdoing, *i.e.*, that defendants participated in prohibited transactions and that defendants' clients suffered damages as a result of the conduct). Whether NSI discriminated against Mustafa is not material to determining Mustafa's alleged breach of the Settlement Agreement. Moreover, Mustafa's belief in NSI's liability or her subsequent inclination to pursue her claims does not excuse her from her

obligations under the Settlement Agreement. *See Manning v. New York Univ.*, 299 F.3d 156, 164 (2d Cir. 2002) (a "plaintiff's change of mind does not excuse her [or him] from performance of her [or his] obligations under the settlement agreement.") (alterations in original) (internal citations and quotations omitted); *Consolidated Edison Co. of N.Y., Inc. v. Fyn Paint & Lacquer Co., Inc.*, No. CV-00-3764, 2008 WL 852067, at * 6 (E.D.N.Y. Mar. 28, 2008) (same); *Evans v. Waldorf-Astoria Corp.*, 827 F. Supp. 911, 914 (E.D.N.Y. 1993) (same)). Even assuming Mustafa believed NSI discriminated against her — and even assuming NSI did, in fact, discriminate against her — Mustafa still had an obligation to comply with the terms of the Settlement Agreement. Based on the foregoing analysis, Mustafa's arguments here fail to raise any material issues of fact which would preclude summary judgment. Thus, the Court recommends to Judge Bianco that summary judgment in favor of NSI be entered since Mustafa has not raised any material issues of fact with respect to the third prong of NSI's breach of contract claim.

### D.    Damages

NSI asserts that in (i) defending the action commenced by the IDHR on Mustafa's behalf at the Illinois Human Rights Commission; and (ii) litigating the instant action, NSI has incurred $26,397.50 in attorneys' fees, $348.60 in travel expenses, and $350 in filing fees, for a total of $27,096.10 in fees and costs. Def.'s Mem. at 12-13. Further, NSI argues that it is entitled to a return of the $60,000 paid to Mustafa, as per the terms of the Settlement Agreement. *Id.*; FAC, Ex. A. Mustafa disputes that NSI's counsel properly appeared before the Illinois Human Rights Commission and is thus entitled to attorneys' fees. *See* Def.'s 56.1 Stmt. ¶ 29.

Under New York law, a contractual provision requiring a breaching party to pay the other party's attorneys' fees and costs is enforceable if it is "unmistakably clear from the language of the contract." *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (citing *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (internal quotations omitted)); *Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*, No. 11 Civ. 1456, 2011 WL 6935295, at *4 (S.D.N.Y. Dec. 29, 2011). Section 3 of the Settlement Agreement states in relevant part:

> MUSTAFA shall not hereafter directly or indirectly commence, continue, assist or participate in any lawsuit, charge, claim or proceeding in any forum . . . against NSI arising out of or relating to any allegation or claim . . . concerning MUSTAFA's employment with NSI or any of its parents, subsidiaries or affiliates, unless directed by court order or subpoena. ***MUSTAFA expressly agrees that if she breaches this Section: (1) she will be responsible for any attorneys' fees incurred by NSI as a result of said breach; and (2) she shall immediately pay back to NSI all monies paid to her under this Agreement.***

FAC, Ex. A Section 3 (emphasis added). Further, Section 13 of the Settlement Agreement entitled "Enforceability" states:

> In the event that any party is found to be in breach of this agreement, the prevailing party shall be entitled to receive from the breaching party reasonable attorneys' fees and costs expended in seeking enforcement of the agreement up through and including the appellate process.

FAC, Ex. A at 6.

The Settlement Agreement, then, entitles NSI to damages. Further, Mustafa has not raised any issue of material fact with respect to this prong of the analysis. Mustafa disputes that NSI's counsel properly appeared *pro hac vice* before the Illinois Human Rights Commission and is thus entitled to attorneys' fees. *See* Def.'s 56.1 Stmt. ¶ 29. However, Mustafa does not

provide any support for this argument other than the assertion itself. As such, Mustafa's argument here is not sufficient to preclude the entry of summary judgment. *Ayazi*, 2011 WL 888053, at *6; *Thompson*, 2008 WL 190449, at *5; *see also Clover v. Gobindram*, 479 Fed. App'x 402, 403 (2d Cir. 2012) (finding defendant liable to plaintiffs' attorneys for reasonable attorneys' fees because she signed a settlement agreement which made her liable to the plaintiffs, jointly and severally with the other defendants, for attorneys' fees); *Perez v. Westchester County Dep't of Corrections*, 587 F.3d 143, 148, 156 (2d Cir. 2009) (upholding award of attorneys' fees pursuant to court-ordered settlement agreement that allowed plaintiffs to file for such fees). To the extent Mustafa sees this as a harsh result, such result is a reasonably foreseeable legal consequence of a clear breach of the express terms of the Settlement Agreement, demonstrated by Mustafa's own conduct.

### E. Mustafa's Additional Arguments

Defendant *pro se* Mustafa makes a number of immaterial arguments in her opposition and supplemental opposition papers in support of her various claims. The Court has reviewed these arguments and finds that they do not raise any material issues of fact which would preclude granting summary judgment in favor of NSI. Further, Mustafa asserts that NSI and its counsel have committed misconduct and civil and criminal law violations, including conspiracy and obstruction of justice. Def.'s Opp. at 12-15; Def.'s Aff. ¶¶ 4-23, 26, 28, 33. Mustafa also appears to accuse Judge Bianco, the IDHR, the Illinois Human Rights Commission, the Assistant General Counsel of the Illinois Department of Human Rights, and the *Pro Se* Office staff of this Court of misconduct, or improperly favoring NSI. Def.'s Supp. Mem. at 4-5, 17-22; Def.'s Aff. ¶¶ 24-25, 27. The Court has reviewed these allegations and concludes that they are unfounded,

or, in some cases, that Mustafa has failed to provide sufficient evidence to support them (*e.g.*, Mustafa states in a conclusory fashion "I believe both Jamie S. Felsen and ALJ Gertrude McCarthy knew or should have known they were acting in violation of the administrative code when they engaged in a conspiracy to induce me to unlawfully withdraw the charge 2010 CF 2063," Def.'s Aff. ¶ 16).

Based on the foregoing analysis, this Court concludes that NSI has met its burden to show that there is no genuine issue of material fact with respect to its breach of contract claim and that NSI is entitled to judgment as a matter of law. As such, the Court respectfully recommends to Judge Bianco that NSI's motion for summary judgment be GRANTED.

However, with regard to the issue of attorneys' fees as damages here, NSI must provide adequate support for the damages it seeks. The party seeking reimbursement of attorneys' fees "must demonstrate the reasonableness and necessity of hours spent and rates charged." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). A party seeking an award bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted); *Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010) ("all applications for attorney's fees [are to] be supported by contemporaneous records") (internal citations omitted); *Carey,* 711 F.2d at 1147. Thus, this Court recommends to Judge Bianco that NSI be directed to submit documentation of its attorneys' fees sufficient to meet these standards, including contemporaneous billing records.

The Court also notes that the Illinois Human Rights Commission, in dismissing Mustafa's complaint, recommended that Mustafa pay NSI reasonable attorney's fees and costs of that action. Labuda Decl., Ex. U. Apparently based on this recommendation, NSI's counsel submitted a fee petition to the Illinois Human Rights Commission and, subsequent to the filing of the present motion, the Commission granted NSI's request for fees in the amount of $15,780.00. Illinois Human Rights Commission Decision and Order dated June 28, 2013, attached as Ex. 5 to Def.'s Let. Mot.[9] Since NSI may not recover twice for the same injury, the Court respectfully recommends to Judge Bianco that the Commission's fee award be taken into account when calculating NSI's damages. *See, e.g., Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009) (citing *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)).

## VI.  MUSTAFA'S REQUEST FOR SANCTIONS AND TO STRIKE THE COMPLAINT

Mustafa seeks to move for sanctions under 28 U.S.C. § 1927 and to strike Plaintiff's FAC. Mustafa contends that NSI's attorneys have "engaged in bad faith conduct" by, *inter alia*, "knowingly and recklessly pursu[ing] a frivolous claim" by bringing this action. Def.'s Let. Mot. at 1. Reiterating her argument that NSI discriminated against her and unlawfully terminated her position, Mustafa maintains that NSI's counsel made misrepresentations before the Illinois Commission for Human Rights. *Id.* at 2-4. Finally, and as outlined above, as evidence that the instant action is frivolous, Mustafa argues (belatedly) that she in fact did send a letter requesting to withdraw all claims against NSI which she had filed with the IDHR and the Human Rights Commission. *Id.* at 2.

---

[9]    NSI also requested costs but that application was denied for lack of proof. Def.'s Let. Mot., Ex. 5.

33

NSI, on the other hand, proffers that it commenced the instant lawsuit in good faith and with a reasonable basis to enforce the Settlement Agreement, with which Mustafa refused to comply. Pl.'s Opp. at 1. Further, notwithstanding Mustafa's newly-raised argument that she attempted to withdraw her claims pursuant to the Settlement Agreement, Mustafa still breached the Agreement in numerous other ways, as outlined in Section V(C), *supra*. *Id.* at 2. NSI maintains that it has been forced to endure and respond to countless motions filed by Mustafa in this action and in the Illinois proceeding, subsequent to the execution of the Settlement Agreement. As a consequence, NSI asserts that Mustafa has cost the company tens of thousands of dollars in attorneys' fees – with no certainty that NSI will ever be able to collect those fees. *Id.* at 3. NSI requests that, in the event Mustafa is permitted to file her proposed motion, she should be required to post a bond to cover NSI's attorneys' fees in the event that NSI is successful in its intended cross-motion for sanctions. *Id.*

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Mustafa has not submitted adequate proof to meet this standard — even in the context of a pre-motion letter — and the Court recommends to Judge Bianco that her request to move for sanctions and to strike the FAC be denied. Specifically, NSI's claim is not "frivolous." Rather, this Court has found that NSI brought a valid claim for breach of contract, for which this Court has recommended to Judge Bianco that summary judgment be granted. Further, Mustafa has

provided no proof of any kind of the alleged "defamation" or misrepresentations allegedly made by NSI's counsel.

Finally, as noted previously, even if Mustafa attempted to withdraw her claims before the IDHR and the Commission, such belated action does not nullify her prior breaches of the Settlement Agreement, including, *inter alia*, her request that the IDHR file a complaint with the Illinois Human Rights Commission on her behalf, and her participation in the proceeding before the Illinois Human Rights Commission, promulgating various motions. As such, the Court concludes that NSI's counsel has not "unreasonably" and "vexatiously" multiplied the proceedings here such that a motion for sanctions is warranted.

**VII.**   CONCLUSION

For the reasons set forth above, this Court respectfully recommends to Judge Bianco that NSI's motion for summary judgment be GRANTED, and Mustafa's request to move for sanctions and to strike the FAC be DENIED. The Court further recommends that NSI be required to submit the underlying documentation to support an award of attorneys' fees as described in this Report and Recommendation.

**VIII.**   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF, **except in the case of a party proceeding *pro se*.** ***Pro se* Defendant Mona Mustafa must file her objections in writing with the Clerk of the Court within the prescribed time period noted above. A courtesy copy of any objections filed is to**

35

**be sent to the chambers of the Honorable Joseph F. Bianco, and to my chambers as well. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal.** *Thomas v. Arn*, **474 U.S. 140, 155 (1985);** *Beverly v. Walker*, **118 F.3d 900, 901 (2d Cir. 1997),** *cert. denied*, **522 U.S. 883 (1997);** *Savoie v. Merchants Bank*, **84 F.3d 52, 60 (2d Cir. 1996).**

**Counsel for NSI International, Inc. is directed to serve a copy of this Order upon** *pro se* **Defendant Mustafa forthwith by overnight and first-class mail and to file proof of service on ECF.**

SO ORDERED.

Dated:   Central Islip, New York
            February 25, 2014

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge